### CITY OF MENA *v.* TOMLINSON BROTHERS.

### Opinion delivered April 19, 1915.

1. MUNICIPAL CORPORATIONS—PUBLIC LIGHTING—AUTHORITY TO MAKE CONTRACT.—A city council has authority to pass an ordinance providing for lighting the streets, parks, and other public places in the city, and when the ordinance is properly passed and accepted by the contractor, it becomes a contract, and governed by the same rules and principles that control other contracts.

2. MUNICIPAL CORPORATIONS—PUBLIC LIGHTING—AUTHORITY OF CITY COUNCIL.—The power to contract for public lighting in a city, rests with the city council, and not with the board of public affairs.

3. MUNICIPAL CORPORATIONS—CITY COUNCIL—ADJOURNED MEETING—VALIDITY.—In all bodies exercising legislative functions, the minority, that is less than a quorum, has the right to adjourn the meeting to another day, for lack of a quorum.

4. MUNICIPAL CORPORATIONS—ADJOURNED COUNCIL MEETING—VALIDITY.—The proceedings of a special meeting of a city council are legal, if all the members had notice, whether all attended or not, and when all the members of the council are voluntarily present in a council meeting and participate therein, it is a legal meeting for all purposes, unless the law provides otherwise. An ordinance passed at such a meeting is valid.

5.  MUNICIPAL CORPORATIONS—LIGHTING CONTRACT—VALIDITY.—Where a
    contractor accepted the terms of an ordinance providing for the
    lighting of a city, passed at a legal meeting of the city council,
    the city will be bound thereby, and the contract will not be af-
    fected by the contractor's delay in installing the work, occasioned
    by an attempt to refer the city ordinance to a vote of the people.

Appeal from Polk Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

Tomlinson Brothers, a partnership, brought suit against the City of Mena for $1,200, alleged to be due from the city for furnishing 150 lights at $1.60 each, for the months of April, May, June, July and August, 1913, under its contract with the city, made on February 28, 1913.

It was alleged that the contract stipulated that if the city did not within thirty days from the passage and publication of the ordinance, designate the location of the lights, the same could be located by Tomlinson Brothers. That under the terms of the contract, they were required to install and furnish 138 lights of 32 candle-power each, and twelve lights of 100 candle-power each, receiving for the service, $1.60 for each light per month. That they had furnished said lights as stipulated in the contract, that the said amount of $1,200 was due for the service for said months, and that the city had failed and refused to pay the same or any part of it; and prayed judgment therefor, with interest.

A copy of the ordinance granting the franchise was exhibited with the complaint and their written acceptance of same.

The city answered, denying that it had entered into a contract with the plaintiffs to furnish lights as alleged; that the alleged contract contained the stipulation relative to locating the lights; that under the terms of the alleged contract the lights were installed and furnished to the city at the price and for the months claimed and that it was due the plaintiffs any sum whatever.

It was further alleged that the contract was never legally entered into because the ordinance was passed at an adjourned meeting of the council, of which no notice was given, because the contract was not made with the plaintiff by the board of public affairs of the city, after an advertisement for bids, and upon the report and recommendation of the board of public affairs to the city council.

It alleged further, that plaintiffs had never accepted the ordinance, had failed to comply with the terms of the alleged contract in not reducing the charge for commercial lighting, as stipulated by its terms, and because of their failure to install the lights for more than a year after entering into the contract.

Plaintiffs replied, denying the allegations of this answer and demurring to several paragraphs of it; alleged also that the city was estopped by its conduct to deny the validity of the contract and its liability for the lights furnished thereunder.

It appears from the testimony that the city of Mena entered into a contract with Tomlinson Brothers to furnish lights for the streets, parks and public places in said city, for a term expiring January 2, 1920. The contract was in the form of an ordinance, accepted in writing by Tomlinson Brothers. Prior to the meeting of the council, the terms of the ordinance had been virtually agreed on by the members of the council, some of whom had requested Tomlinson Brothers to proceed with the purchase of materials for installment of the lighting system, that it might be done as soon after the passage of the ordinance as practicable and some of the materials had been purchased in compliance with the suggestion. After the passage and acceptance of the ordinance and a large part of the materials for construction had arrived and was being installed, a referendum petition was filed with the Secretary of State, containing the required number of petitioners, asking that the ordinance be referred to the voters of said city, and upon notice received from the Secretary of State that it had been filed, Tomlinson Brothers

stopped the work of further construction.    On June 7, 1913, they filed a suit, against the Secretary of State, in Pulaski County, praying that he be enjoined from certifying the ordinance to the election commissioners of the county to be voted upon. The case was finally disposed of on appeal to the Supreme Court, by a decision rendered in their favor on December 22, 1913.

Immediately thereafter, plaintiffs resumed the work of constructing the lighting system, and installed the lights on the last day of February, 1914, and presented monthly bills for the amount claimed to be due for furnishing lights each month thereafter for allowance, and all were disallowed or not acted upon.

Plaintiffs reduced the price on commercial lighting to the amount fixed by the terms of the ordinance on December 1, 1913.

The ordinance granting the franchise and making the contract for lighting the city with Tomlinson Brothers' written acceptance thereof, is recorded as ordinance No. 285 in the ordinance book of the city. It shows it was passed and approved February 27, 1913.

The time for the regular meetings of the city council of Mena was the first Tuesday of each month. The city council met in regular session on the first Tuesday of February, 1913, and adjourned to February 12. At the meeting on the 12th, the minutes showed that the council met in adjourned session, the mayor and clerk and three aldermen, naming them, were present, and that on account of no quorum they adjourned to meet on February 20. The minutes of the meeting of the 20th likewise showed that the council met in adjourned session, that the mayor and three aldermen, naming them, were present, and that because of no quorum, they adjourned to meet again on February 27. On February 27, the minutes show that the council met pursuant to adjournment, and also that all the aldermen of the city were present, that the ordinance was introduced, read the first time, and under suspension of the rules read the second and third times, and that five of the aldermen voted for it on

its passage, and the sixth one voted against it. The acceptance by Tomlinson Brothers reads:

"To the Mayor and City Council of the City of Mena, Arkansas.

"We, Tomlinson Brothers, hereby accept the contract made by the city council, by Ordinance No. 285, passed, approved and published, February 28, 1913, authorized the lighting of streets and furnishing current to commercial consumers.

"This February 28, 1913.

"Tomlinson Brothers,

"By F. W. Tomlinson."

One of the plaintiffs testified that the number of lights were furnished as stipulated in the ordinance at the price allowed, for all the months charged for, and that no part of the account had been paid. He testified further that they were delayed in the construction of the lighting plant and the installation of the lights by the referendum proceeding to submit the ordinance to the voters for their approval. That immediately after it was disposed of the system was completed and the lights installed and the reduction made in the charge for commercial lighting in accordance with the price fixed in the ordinance, beginning December 1.

He stated also that three members of the council, naming them, designated the location for the lights, and that one or two aldermen had called their attention to certain lights being in bad order, which had been repaired. That all the lights were equal to or in excess of the candle-power required by the contract.

The city requested the court to instruct a verdict in its favor, but the court directed a verdict for plaintiffs for the amount of their claim, and from the judgment thereon the city brings this appeal.

*Chas. A. Zweng* and *Minor Pipkin,* for appellant.

1. The contract should have been made by the board of public affairs: Kirby's Digest, § 5643. It is clothed with the *exclusive* power to purchase all "supplies,"

which comprises anything yielded or afforded to meet a want (8 Words & Phrases, 6801), or anything furnished a city, etc. *Ib.* Light is a supply within the statute. Suth. on St. Const., 392. If not, it is included in "other things." *Ib.,* 437.

2. The improvement involved more than $300 and no advertisement was made for bids. 13 Pac. 249. A city when sued may plead as a defense that the requisite steps to authorize the contract were not taken. 108 Ark. 24; 63 N. E. 711; 98 Ind. 168; 98 N. W. 287. The statute must be followed. 49 Ark. 480; 123 Mo. 546; 14 S. E. 843; 57 Atl. 837. If not such contracts are void (49 Ark. 480; 3 Ky. Law Rep. 85), and no recovery can be had. 26 N. W. 527. Nor is the city estopped, even where benefits have been received. 82 Pac. 601; 23 Oh. C. C. Rep. 96. A void contract can not be ratified. 82 Ark. 531; 51 Atl. 32; 105 N. W. 293.

3. The city council was not legally convened. Kirby's Digest, §§ 5601-5607; 132 Fed. 668; 44 S. E. 271; 56 Mo. App. 615; 27 Ark. 414; 28 Cyc. 327.

4. The contract was never accepted.

5. Appellees violated the contract and were guilty of gross laches.

6. There is a fatal variance between the pleadings and proof.

*W. Prickett,* for appellees.

1. The council properly made the contract. The board of public affairs under § 5643, may have had the authority to make the contract, but the power is *not* exclusive of the council. The principal can certainly do what an agent or arm can do. An agent can have no power his principal does not possess. It was never intended by the word "exclusive" to deprive the council of its constitutional powers, rights or duties. 55 Cal. 606; Kirby's Dig., § 5473; 80 Ark. 108-138; 61 *Id.* 397; Kirby's Dig., §§ 5445-5446.

2. A failure to publish or advertise or give notice is a mere irregularity. The contract having been performed

in good faith and the city having received the benefits, is estopped from denying the regularity of the proceedings. 29 Am. Rep. 134. A municipal corporation is subject to estoppel *in pais* by the acts or contract of its officers. 28 Cyc. 465.

3. The council was legally convened. Kirby's Dig., § 5607; 174 Fed. 182; 84 Neb. 434; 83 Ark. 491. All the members were present.

4. The contract was duly accepted as shown by the records.

5. There were no laches by appellees, and there was no violation of their contract. The delay was unavoidable. 110 Ark. 531.

6. No variance is material unless it has actually misled the adverse party to his prejudice. Kirby's Dig., § § 6140-6145; 104 Ark. 276.

7. The finding of the court is conclusive. 111 Ark. 190; 170 S. W. 72.

KIRBY, J., (after stating the facts). Appellant contends that the contract of Tomlinson Brothers, with the city, is void, for the reason that it was not made by the board of public affairs of the city, and that the ordinance prescribing its terms was not passed by the city council at a legal meeting, and in the manner required by law.

The board of public affairs of a city of the first-class is given exclusive power to make certain purchases for the city and required, where the amount of the expenditure involved exceeds $300, to transmit an estimate thereof to the council, with a recommendation in relation thereto, etc. Kirby's Digest, § 5643.

Section 5607, Kirby's Digest, provides: "The city council shall possess all the legislative powers granted by this act and other corporate powers of the city not herein prohibited, or by some ordinance of the city council made in pursuance of the provisions of this act, and conferred on some officer of the city; they shall have the management and control of finances, and of all the property, real and personal, belonging to the corporation; they shall

provide the times and places of holding their meetings, which shall at all times be open to the public; and the mayor, or any three aldermen, may call special meetings in such manner as may be provided by ordinance. * * *"

A majority of the whole number of aldermen shall be necessary to constitute a quorum of the city council for the transaction of business. Section 5601, Kirby's Digest.

Section 5473 provides: "On the passage of every by-law or ordinance, resolution or order, to enter into a contract, by any council of any municipal corporation, the yeas and nays shall be called and recorded; and to pass any by-law or ordinance, resolution or order, a concurrence of a majority of a whole number of members elected to the council shall be required."

(1)  The city council had the power to pass the ordinance providing for lighting the streets, parks and other public places in the city and when it was properly passed and accepted by Tomlinson Brothers, it became a contract, binding on the parties thereto and such contracts are governed by the same rules and principles that control other contracts. Kirby's Digest, § § 5443-5448; *Lackey* v. *Fayetteville Water Co.,* 80 Ark. 108.

(2)  The board of public affairs had no authority to provide for, construct or acquire, works for lighting the streets, parks and other public places of the city by electricity, nor to authorize the construction thereof, the power being expressly given to the municipal corporation to be exercised necessarily by the city council. *Lackey* v. *Fayetteville Water Co., supra.*

There is nothing in the statute providing for the appointment of the board of public affairs and prescribing its duties, authorizing it to make a contract, where the amount of the expenditure involved may exceed $300, without an ordinance of the city authorizing it, when it becomes the duty of the board to advertise and let the work on contract to the lowest responsible bidder, under the terms of the ordinance.

It is true the ordinance was passed on a day other than the regular meeting day of the council. On the reg-

ular meeting day there was less than a quorum present, and they adjourned to another day on which there was not a quorum present, and they adjourned until the 27th of February, 1913, when the mayor and all the aldermen of the city were present, held a meeting of the council and the ordinance was duly passed, the yeas and nays being called and recorded, and five of the six aldermen voted in favor of the ordinance, and one against it.

The council had the power to provide the time for holding their regular meetings, and the mayor or any three aldermen are given the power by law to call special meetings in such manner as may be provided by ordinance. The meeting at which the ordinance was passed was not a regular meeting, nor was it one attempted to be called by the mayor or three aldermen in accordance with the provisions of any ordinance. It was held on the second adjournment by less than a quorum from the regular meeting day, and although the law requires a majority of the whole number of aldermen to constitute a quorum for the transaction of business, the adjournment of the council to another day because of the lack of such quorum is not the transaction of business within the meaning of the statute, requiring the presence of a quorum.

(3)   In this country the rule is generally recognized in all bodies exercising legislative functions that the minority, less than a quorum, has the right to adjourn the meeting to another day for lack of a quorum. 2 McQuillan Municipal Corporations, § 595; *Kimball* v. *Marshall*, 44 N. H. 465; *State ex rel. Parker* v. *Smith*, 22 Minn. 218.

And even if it could be held that the adjournment of the regular meeting for lack of a quorum to another day would not constitute the meeting of the council upon the adjourned day, a legal meeting, as a continuation of the regular meeting, that alone would not invalidate the ordinance which would be valid, if passed at a special meeting, held as provided by law. It appears that the city council of Mena had not provided by an ordinance for the calling of special meetings, but the mayor and three aldermen had adjourned the regular meeting to the day on

which the ordinance was passed, and on that day all the aldermen of the city were present and participated in the council meeting and passed the ordinance prescribing the terms of the contract.

(4)   The proceedings of a special meeting duly called would be legal, if all the members had notice, whether all attended or not, and when all the members of the council are voluntarily present in a council meeting and participate therein, it is a legal meeting for all purposes, unless the law provides otherwise. *State ex rel. Parker* v. *Smith, supra; Lord* v. *City of Anoka,* 36 Minn. 176; *Magneau* v. *City of Freemont,* 27 American State Reports, 436, 9 L. R. A. 786; 28 Cyc. 329.

(5)   There is nothing in the statutes prohibiting the passage of an ordinance at such a meeting, and having been properly passed, it is valid. The appellees accepted its terms in writing, in accordance with the provisions thereof, and it became a binding contract.

No time is fixed by the ordinance when the installation of the lighting plant should be completed and the failure of the appellees to reduce the cost for lighting under commercial contracts to private consumers on the date fixed in the ordinance, under the circumstances, the delay of the construction of the plant being occasioned by the attempt to refer the ordinance to the electors for their approval and no action being taken by the city to forfeit the contract because thereof, would not relieve the city from its obligation to pay for the lights furnished it, in accordance with the terms of the contract.

It is undisputed that the lights were furnished in accordance with the terms of the ordinance for the time charged for and at the price agreed upon, and the court did not err in instructing the verdict.

The judgment is affirmed.