WILLIAM J. LONG *vs.* ALPHONSE A. FUGERE.

APRIL 16, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

PER CURIAM. This is a petition in equity in the nature of *quo warranto* brought under the provisions of general laws 1923, chapter 379, by William J. Long against Alphonse A. Fugere, both of the city of Woonsocket, to determine their respective claims to the office of commissioner of public works of that municipality.

The petitioner bases his claim to the above office upon the following alleged concurrent action of both branches of the city council, namely, first, his election by the common council at its meeting held on July 23, 1935; second, concurrent action thereon by the board of aldermen at its meeting held on August 13, 1935; and third, his qualification by the approval of his bond by the board of aldermen at its meeting on September 24, 1935. These actions of the common council and board of aldermen, he alleges, were taken in accordance with and pursuant to the provisions and authority contained in chapter 2245 of public laws 1935.

The respondent alleges that he is the lawful incumbent in that office by virtue of his election thereto by the city council in January, 1933, pursuant to the terms of chapter 1498, P. L. 1929. He contends (1) that his present term of office as commissioner of public works was not terminated by the passage of chapter 2245 and that the city council was not authorized in the premises to elect a new commissioner of public works; and (2) that, even if chapter 2245 of public laws 1935, does authorize the city council to make such election, the petitioner has failed to establish his claim to the office, because, first, the vote of the common council on July 23, 1935, purporting to elect the petitioner, was not a majority vote of the members present and was, therefore, invalid; second, the vote of the board of aldermen on August 13, was not an "action in concurrence" upon the said vote of the common council; third, the alleged action

in concurrence by the board of aldermen was taken in any event at an irregular and illegal meeting; and fourth, the meeting of the board of aldermen on September 24, 1935, when the petitioner's bond was approved, was not a valid meeting because of a certain alleged lack of order and decorum.

In connection with these contentions it should be noted that in January, 1933, the respondent was elected to the office of commissioner of public works of the city of Woonsocket for a term of four years pursuant to chapter 1498, P. L. 1929. It required his election by the common council and the board of aldermen *in joint convention*.

Chapter 2245, public laws 1935, amended chapter 1498, public laws 1929, and, among other things, changed the mode of election of such commissioner to an election *by concurrent action by both branches of the city council*, and shortened his term of office to two years. Shortly after the passage of chapter 2245 and acting under its authority, the city council proceeded to select a new commissioner of public works. Certain meetings of the common council and board of aldermen followed at which action was taken purporting to elect such commissioner. These actions were the subject of controversy in the case of *Gelinas* v. *Fugere*, 55 R. I. 225, which was a petition in equity in the nature of *quo warranto* filed in this court to try title to this same office. The respondent in that case and the respondent in the instant cause is the same person, Alphonse A. Fugere. Our opinion in the case of *Gelinas* v. *Fugere, supra*, was filed July 20, 1935, and denied the petition, holding certain involved meetings as invalid. We further held that the respondent Fugere had received the vote of the common council at a valid meeting of March 27, 1935, which action was forwarded to and was then pending before the board of aldermen, and that said respondent was entitled to the office as a hold-over appointee until his successor was elected and qualified. Shortly thereafter began the series of meetings of the city council at which the petitioner alleges

that he was properly elected. In view of our later finding upon the meeting of August 13 as decisive of the case, it will not be necessary to state here all of the facts relating to the other meetings or to discuss the several points raised with reference to them. Suffice it to say that the important facts were largely admitted but that the parties sought to draw from them wholly different conclusions.

The issues presented here, in our view, raise two main questions that are decisive of this case, namely (1) whether or not chapter 2245 of public laws 1935 authorized the city council to elect a new commissioner of public works and (2) whether the meeting of the board of aldermen, and the action taken therein in electing the petitioner, on August 13, 1935, were valid.

The respondent now urges strongly that chap. 2245 is loosely drawn and ambiguous; that it does not end the current term of the respondent by express language nor by necessary inference; and that, in effect, this statute does not empower the city council to elect a new commissioner of public works until the respondent's term, as fixed by chap. 1498, P. L. 1929, expires on February 1, 1937. These contentions require our consideration of the purpose and language of chap. 2245, P. L. 1935. It was passed on March 12, 1935, in amendment of chap. 1498, P. L. 1929, under which the respondent originally was elected. The dominant features of the amendment are contained in section 1, and the pertinent parts thereof read as follows: "After the passage of this act, the city council of Woonsocket by concurrent action of both branches, shall elect a commissioner of public works, hereinafter called the commissioner, to hold office until February 1, 1937, and until his successor shall be elected and qualified . . ."

It is well settled that the adoption of an amendment raises a presumption in favor of the intent of the general assembly to change the existing law. 59 C. J. 1097, 1098. The respondent admits this, as well as the fact that at least two vital changes are effected by the language of the statute,

namely, (1) a change of the mode of election by "joint convention" to election "by concurrent action of the two branches of the city council," and (2) a reduction in the term of the office from four to two years. This intent and these vital changes, he admits, are expressed in section 1 in clear and unequivocal language, but, he contends, the respondent's term is not declared expressly therein to be ended.

On the contrary, he argues that the failure of the general assembly to use in this statute the same definite language used previously during the same session to terminate certain other offices and terms, establishes conclusively the lack of any such intent to anticipate the end of the respondent's current term. This argument is unsound. We concede that some such approved form of definite expression might have removed all ambiguity concerning the particular intent of this statute. However, it does not follow that the use by the general assembly of some other language, if reasonably expressive of a similar intent, must be given by us an opposite construction or be disregarded entirely.

The respondent further argues ingeniously that chap. 2245, being an amendatory act, becomes merged in the original chap. 1498 and should be read as if it had been always a part of the latter. So read, he reasons that his appointment in 1933 would have satisfied the terms thereof and the new election would not have become effective until February 1, 1937.

Assuming for our purpose the underlying general principle of construction suggested, one fault with the respondent's interpretation is that it loses sight of the fact that the effective date of this enactment, whether read alone, or as a part of chap. 1498 as thereby amended, is beyond doubt March 12, 1935, and not 1929 or 1933. A further difficulty, which the respondent overlooks and which we think is apparent and conclusive, is that this amendment admittedly requires election by *concurrent action* of both branches of the city council. The respondent, Fugere, was never so

elected but at all times was elected by a vote in *joint convention.*

The status of a commissioner under chap. 2245 to be elected by such concurrent action and Fugere's status from his election by joint convention are mutually exclusive and cannot exist at the same time. This difference is further established by the precise language which requires that the new commissioner, to be *elected by concurrent action,* "*shall*" hold office *until February 1, 1937.* This cannot reasonably mean that one elected previously by *joint convention* may hold office until 1937, or that one elected by *concurrent action* shall not hold office until *after February 1, 1937,* for which latter construction the respondent contends.

Section 2 of this chapter reads as follows: "The term of office of the commissioner of public works elected by concurrent vote of both branches of the city council in January, 1933, shall cease and determine upon the election and qualification of his successor in office." Construed separately, apart from its context, it is admittedly ambiguous. Read together with section 1, it still may be open to different interpretations, one of which leaves it meaningless or, at least repugnant to certain provisions in section 1. However, we feel that the canons for correct construction of statutes require us to give language that meaning which will give effect to the otherwise express intent of the statute, rather than one which will strip ordinary words of their plain meaning and thus nullify and destroy the dominant intent of the statute as a whole.

In our view, the general assembly in section 1 was dealing with the office generally, and not with its occupant or its duties. These latter elements then were cared for in sec. 2, which insures continuous performance of the duties of the office by the respondent until the new officer is elected. The language of sec. 2 is as clearly descriptive of Fugere as if it read the term of commissioner Fugere *personally* shall continue until the newly elected successor qualifies. Section 2 can be read therefore together with section 1 in such a way as to give both reasonable meaning and effect.

The respondent admits that the term of office was reduced from four to two years. This cannot be given full effect by holding it was intended that Fugere should finish his current term because he then would be holding under his old appointment of *four years* and not under the new election for *two years*. But, if a new commissioner be elected after the enactment of chap. 2245 and to hold office until February 1, 1937, the first term, so created, approximates the two-year term which the respondent admits was intended.

In passing, it is significant to note that the respondent claimed title to this same office in the case of *Gelinas* v. *Fugere, supra,* and based his claim there upon his alleged election by the city council pursuant to the authority of chap. 2245, which he now attacks. When all of the members of the common council, and the board, and the mayor, and the respondent, and all of the attorneys who appeared in that action and who also are involved in this action, united in their interpretation of chap. 2245, as giving the city council the power to elect a new commissioner, it would indicate at least that the language conveyed clearly the intent that the council was empowered thereby to proceed to a new election. If read together, all the sections of the statute and the statute as a whole can be given reasonable effect by our interpretation.

Applying to the instant case the established principles of statutory construction, including most of those cited by the respondent and with which we do not disagree in substance, we hold that chap. 2245 of public laws 1935, by necessary operation of its provisions effected the termination of the existing term of office of the commissioner of public works sufficiently, at least for legislative purposes, to authorize the city council to elect a commissioner of public works according to the new mode and for the new term as therein provided.

The second main question presents for our consideration the actions taken by the common council at its meeting of July 23, and of the board of aldermen at its meetings of

August 13 and September 24, in electing the petitioner and in approving his bond. Merely for the purpose of this discussion, in view of our later finding, we may assume the correctness of the petitioner's contentions that he received a majority of votes cast and was elected properly at the council meeting of July 23; that the action of the board of aldermen in electing the petitioner at its meeting of August 13, if otherwise valid, was a legal *concurrence* in the action of the common council above assumed, and also that his bond was legally approved at the meeting of the board on September 24.

The respondent, however, contests all of these points strongly. The controlling question therefore remaining before us is whether the action taken by the board of aldermen at its meeting on August 13 was valid. The petitioner contends (1) that the purported adjournment of the regular meeting of the board on August 13 by less than a quorum was premature and ineffectual, and (2) that a custom or practice followed for ten years by the board, in the absence of specific charter provision or rule upon the subject, established as valid the meeting which was begun after the purported adjournment for lack of a quorum but within the appointed hour of 8 o'clock, p. m. The respondent urges the exactly opposite view. To understand these contentions, the following brief summary of facts admitted or established by evidence before us concerning the meeting of August 13 will suffice.

The regular meeting of the board of aldermen was scheduled for August 13, at 8 o'clock, p. m. Aldermen Doris and Morin, constituting the so-called minority, and the mayor were present at or a little before 8 o'clock. Aldermen Holland, Martin and Lauzon, constituting the so-called majority, were absent. According to sec. III, clause 5, of the city charter of the city of Woonsocket, the mayor "may preside in the board of aldermen and in convention of the two boards, and shall have a right to vote in case of equal division only." At about 8:13 o'clock

the mayor took the chair to call the meeting to order and asked the city clerk to call the attendance roll. Only aldermen Doris and Morin answered, all the other members still being absent.

The city charter requires a majority of the members to be present in order to constitute a quorum for the transaction of business. The mayor noted the absence of a quorum and announced his willingness to entertain a motion to adjourn. Such a motion was made and seconded, and, upon a voice vote, was declared to have passed. Thereupon, the mayor declared the meeting adjourned at about 8:14 o'clock. The mayor and aldermen Doris and Morin then left the chamber and city hall, and did not return that night.

The majority members appeared at about 8:56 o'clock and proceeded to hold a meeting, with aldermanic president Holland, in the absence of the mayor, acting as presiding officer. The city clerk, who also was present earlier in the evening when the meeting was called and declared adjourned by the mayor, was present and acted as clerk. The city solicitor, upon request of certain of the members, gave his opinion substantially that the meeting, being begun within the hour of 8 o'clock p. m., was legal. Without any effort to notify the mayor or the minority members, this later meeting of the board of aldermen began about 8.56 and ended about 9:16 o'clock. At this meeting the petitioner was nominated from the floor for the office of commissioner of public works and received all of the votes of the three members present.

The petitioner contends that the adjournment by the minority in the absence of a quorum was premature and relies chiefly upon the cases of *Fitzgerald* v. *Pawtucket St. Ry. Co.*, 24 R. I. 201, and *Lester* v. *Citizens' Savings Bank*, 17 R. I. 88. We do not think that either case supports his contention. In the *Fitzgerald* case, the question was on the validity of a meeting of the council after the hour set for the inauguration of a new council, at which an ordinance was

passed over the mayor's veto. The mayor, on January 4, 1902, returned to the council, with his objections, the ordinance previously passed, whereupon the council moved to continue it for action to January 6, 1902, at 9 o'clock, to which time it also specially adjourned. Only the presiding officer appeared at that time for the adjourned meeting and, after waiting until 9:35 o'clock, he ordered the clerk to call the roll. All the other members being absent, the presiding officer declared the meeting adjourned for lack of a quorum. By the terms of the charter, 10 o'clock, a. m., was the precise hour fixed for the newly elected members of the council to be inaugurated. At 10 o'clock, however, the members of the old council, except the presiding officer, made an appearance and elected a president *pro tem* and purported to hold a meeting at which the ordinance in question was taken from the table and passed over the mayor's veto. There was no evidence whatever before the court of any purported action taken at any meeting held within the hour of 9 o'clock. The declaration by the presiding officer of adjournment, for lack of a quorum, set no time to which the meeting was adjourned and no time that day, after 10 o'clock, could have been set therefor, because of the scheduled inauguration of new members. In this situation, the court said, at page 203: "Several questions have been raised which we need not consider, because, upon the facts as stated, the controlling question is whether the final passage of the ordinance was legal. We think it was not."

The petitioner, however, seizes upon certain language used by the court from which he seeks to infer that a rule was stated governing the proper procedure for adjourning a municipal body in the absence of a quorum. We do not agree with such an interpretation, because the question of the validity of the adjournment by the presiding officer at 9:35 o'clock, was in no way material or necessary to the determination of the issue. The court had said, as previously quoted, that there were contentions which were not

to be considered in view of the controlling issue presented by the facts.

We view the language referred to, wherein the court quotes all but the last sentence of §361 Cushing on Law and Practice of Legislative Assemblies, as relating to a statement of facts being contended for by one of the parties, preliminary to the statement of the real issue which was intended to be and was decided. Ordinarily the court does not state a rule upon a matter which it had already recognized as immaterial and which was not presented by the facts as an issue in the case.

Our interpretation is supported apparently by other later language used by the court at page 204, where it says: "If the declaration of adjournment by the president was premature it was still effectual, as no quorum appeared within the time named. The meeting had expired by its limitation of adjournment." This conditional observation, upon an immaterial point not in the evidence or in issue, can hardly be turned into a declarative statement of law that the adjournment in question was premature and ineffectual. It seems clear to us that the facts and issues in the *Fitzgerald* case are clearly distinguishable from those presented to us by the instant case.

Neither does the case of *Lester* v. *Citizens' Savings Bank*, *supra*, support the respondent's contention. Its implications tend rather to defeat the validity of the meeting of August 13, at which meeting the petitioner claims to have been elected. That case concerns a mortgage foreclosure sale advertised to be held at twelve o'clock. The sale took place between twelve-thirty and one o'clock. The court held, at page 89, that "the sale occurred between half past twelve and one o'clock, and that it was valid; since, for the purposes of the sale, the hour of twelve o'clock must be taken to last until the hour of one begins, *if the attendance continued. McGovern* v. *Union Mutual Life Ins. Co.*, 109 Ill. 151." (italics ours) There was only a delay in starting the sale and no postponement by the auctioneer or other persons

authorized to hold the sale. The court later says: "There is no satisfactory evidence that any person intending to bid left before the bidding began." If any inference be justified from this case, it would seem to be that the court would have held otherwise if there had been a previous announcement of adjournment made by one ordinarily authorized to make it, or even if the attendance had substantially decreased before the sale began.

In the instant case, the minority members and the mayor had left the scene in reliance upon their adjournment of a regular meeting, in keeping with a practice previously established by the board of aldermen.

The authorities on the question of adjournment of legislative assemblies, such as municipal bodies, apparently divide into two general classifications: One holds, as set forth in Cushing, §361, *supra*, that less than a quorum may not adjourn, for the reason that a quorum is always necessary in order to transact any business. In such case the presiding officer may adjourn the meeting without entertaining any motion to adjourn. The other class holds, apparently, in accordance with Cushing, §§361, 363, that a motion to adjourn to the next regular sitting or meeting day, is not such "transaction of business" as requires a quorum. Under this rule, a motion to adjourn may be entertained and passed. In the instant case there was uncontradicted evidence that, following the passage on August 13 of the motion to adjourn for lack of a quorum, the mayor, as presiding officer, did in fact declare that meeting adjourned, which we have interpreted as an adjournment to the next regular meeting of the board. In this situation, the net result is the same whichever of the above rules is applied. Evidence was produced of adjournment in accordance with both methods suggested by the above rules. The prevailing rule in Rhode Island seems to be that less than a quorum may adjourn, for lack of a quorum, to the next regular meeting time and place. Nor can any harm possibly come from such a conclusion, because

the majority members have it within their power at all times to be present at the fixed hour for a regular meeting and thus may prevent adjournment if they choose. If the meeting be adjourned in their absence, the majority have previous notice of the next regular meeting date, and no general or real business is possible of transaction in their absence.

The petitioner further argues that the practice of the general assembly in this regard, which conforms to the rule just previously stated, is fixed by the Rhode Island constitution and should not be controlling here. Conceding the correctness of this premise, we do not think that it precludes us from considering it, in the absence of any showing or reason to the contrary, as a fair indication of the generally prevailing legislative practice elsewhere in this State which is crystallized and is reflected to some extent in the constitution.

We think that the weight of reason and authority in a situation such as is presented here, and, in the absence of any contrary provision in the charter or rules of the body, supports the finding that the meeting of the board of aldermen regularly scheduled for 8 o'clock, p. m., on August 13, 1935, could be adjourned by less than a quorum and that it was legally adjourned at 8:14 o'clock, until the next scheduled regular meeting time and place.

In *City of Mena* v. *Tomlinson*, 118 Ark. 166, (1915), 175 S. W. 1187, 1189, where the question turned upon the validity of an ordinance passed at a meeting of the council in an alleged illegal manner, the rule was recognized and stated by the court as follows: "although the law requires a majority of the whole number of aldermen to constitute a quorum for the transaction of business, the adjournment of the council to another day because of the lack of such quorum is not the transaction of business within the meaning of the statute, requiring the presence of a quorum.

"In this country the rule is generally recognized in all bodies exercising legislative functions that the minority, less than a quorum, has the right to adjourn the meeting

to another day for lack of a quorum. 2 McQuillan Municipal Corporations, §595. *Kimball* v. *Marshall*, 44 N. H. 465; *State ex rel. Parker* v. *Smith*, 22 Minn. 218."

In *Rolla* v. *Schuman*, 189 Mo. App. 252 at 259, the question was presented whether or not less than a majority of the board of aldermen convening at the time and place fixed for its regular meeting may adjourn to a subsequent date. After discussing the two rules suggested heretofore, the court said: "We will concede that for the transaction of the general business of the city a majority of the members elected are essential, but we are not willing to concede that for the purposes of perpetuating the life of a body to a date subsequent to the regular time of meeting so that the business of the city may be then transacted that less than a majority may not adjourn to a subsequent date. We think the reason of the authority cited by the plaintiff is better and more calculated to promote the welfare of a city's government and expedite business than is the theory that it requires a majority to even adjourn to a subsequent date. In this case, as in one of the cases cited by the plaintiff, the practice of a minority adjourning had prevailed for a number of years."

To establish a practice favorable to his contention, the petitioner relies largely upon an opinion given in 1926 by the then city solicitor, by request. At that time the question of adjournment by the minority on April 13, 1926, to a *special* meeting date on April 14, at *7:30 o'clock*, an unusual hour, was considered by the city solicitor as being outside the province of the minority. He therefore gave his opinion that a meeting held within the hour appointed, notwithstanding the abortive adjournment, was legal. We think the opinion correctly stated the law under the circumstances then prevailing, because in our estimation, the minority may not adjourn to a day certain. In Cushing, §§361, 363, the rule stated gives the minority a right to adjourn effectually, in the absence of a quorum, but *only to the next regular sitting day*, which we interpret

to mean the *next regular meeting or legislative day*. In any event, the uncontradicted testimony before us shows that at no time did the majority members ever attempt to hold a meeting within the hour appointed for a regular meeting wherein the minority had previously adjourned the meeting, for lack of a quorum, to the next regular meeting. On the contrary, the evidence showed unquestionably that this minority of the board of aldermen on numerous occasions had adjourned, before the expiration of the hour, to the next regular meeting to the knowledge and acquiescence of the majority members; that the minority on the occasions of these adjournments had waited variously from ten minutes to the entire hour for the majority members to appear, without success. The custom, therefore, established by the majority members, according to the evidence before us, was *not* to hold or attempt to hold such a meeting after an adjournment by the minority for lack of a quorum, and appears, at least inferentially, to validate such adjournment by the minority to the next regular meeting date.

For the reasons given, a careful consideration of all the evidence and authorities submitted to us require our conclusion that the adjournment of the meeting of the board of aldermen on August 13, 1935, at 8:14 o'clock, p. m., by the mayor and the minority members, or less than a quorum, was not premature but was valid and effective to adjourn the meeting until the next regular meeting date. It follows, therefore, that the ensuing meeting purported to have been held by the majority members at 8:56 o'clock, on August 13, was not a valid meeting and that the action taken therein to elect the petitioner was invalid.

Having failed to establish the validity of all of the actions upon which he bases his claim to the office in question, it follows that the petitioner's claim to the office must fail.

The petition, therefore is denied and dismissed.

*Thomas F. Cooney, Edward F. Dwyer*, for petitioner.

*Eugene L. Jalbert, Felix A. Toupin, James H. Kiernan*, for respondent.