**James W. DIAMOND, Plaintiff, Appellant,**

v.

**Carmine A. BUCCI, et al., Defendants, Appellees.**

No. 83–1617.

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1984.

Decided April 12, 1984.

Richard J. Israel, Providence, R.I., with whom Levy, Goodman, Semonoff & Gorin, Providence, R.I., was on brief, for plaintiff, appellant.

Vincent J. Piccirilli, Providence, R.I., with whom Charles A. Pisaturo, Providence, R.I., was on brief, for defendants, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellant Diamond is the Superintendent of Parks of the City of Providence, Rhode Island. Until recently, under applicable law, he has served at the will of the city Board of Park Commissioners. In 1979 the Board suspended him. He sued the Commissioners and other city officials, claiming a violation of constitutionally protected free-speech and due-process rights. In June 1980 the parties entered into a consent decree that restored Diamond to his position and gave him greater job security. Essentially, the defendants promised not to alter his job status "arbitrarily or capriciously or without reason." Consent Order ¶ 4(b) (June 26, 1980). They promised him procedural protections should they seek to suspend or dismiss him. And they promised he could appeal any adverse action to an arbitrator. In November 1980 the voters of Providence adopted a new Home Rule Charter, taking effect in January 1983. The issue here is whether that Charter removes the job protection that the consent decree gave Diamond.

The relevant provisions of the Charter state that a newly constituted Board of Park Commissioners

shall ... [a]ppoint for a period of not more than five (5) years a superintendent of parks ...; and remove the superintendent of parks for official misconduct or failure to perform the duties of the office, after notice and hearing by a majority vote of its members.

Home Rule Charter 1980, City of Providence (Sept. 18, 1980), § 1003(a)(3). The Charter also states that

officers of the city ... who are holding office on the effective date of this Charter, shall continue to serve in their respective offices until the expiration of

their terms, or until they shall have been removed from office pursuant to the terms of this Charter applicable to their respective offices, or until their offices shall have been abolished ....

*Id.*, § 1402. The new Board of Park Commissioners, believing that these Charter provisions superseded the consent decree's protections, declared Diamond's position vacant and made him Acting Interim Administrator, while they searched for a successor. Diamond asked the federal district court to enforce the decree. The defendants replied by asking the court to modify the decree to remove its prospective job protections. The district court, finding it "difficult to imagine that the drafters of the Charter did not intend the appointment power to become exercisable upon the Charter's effective date," Opinion and Order of July 12, 1983, at 10, found for defendants and vacated the relevant portions of the decree. Diamond appeals.

We note at the outset that we need not enter the thicket of questions concerning the effects on federal consent decrees of subsequent changes in relevant state or local law; *cf. System Federation No. 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961) (discussing propriety of modifying consent decree in response to change in federal law on which original decree was premised); *Fortin v. Commissioner of Massachusetts Department of Public Welfare*, 692 F.2d 790, 799 (1st Cir. 1982) (same); for, the district court has interpreted this decree as itself requiring modification of its terms to conform to relevant, Charter-provided changes in Diamond's employment status. This interpretation is correct for two reasons. First, as the district court found, the consent order was intended to shield Diamond "against wrongful actions by city officials and not to immunize him from the adverse effects of a legitimate change in the terms of employment." Opinion and Order at 7. There was thus little basis in the decree's history to interpret it as seeking to override relevant Charter-made changes in local law.

Second, the Charter was enacted by the voters of Providence. And we very much doubt that, in the circumstances of this case, the decree could bind them. The decree's injunctive provisions bind "the parties to the action, their officers, agents, servants, employees, and attorneys, and ... those persons in active concert or participation with them who receive actual notice of the order." Fed.R.Civ.P. 65(d); *see, e.g., Chase National Bank v. City of Norwalk,* 291 U.S. 431, 436–37, 54 S.Ct. 475, 477–78, 78 L.Ed. 894 (1934); *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29, 34–35 (1st Cir.1980) (quoting *Alemite Manufacturing Corp. v. Staff,* 42 F.2d 832, 832–33 (2d Cir.1930) (L. Hand, J.)); *United States v. Wilhelm Reich Foundation,* 17 F.R.D. 96, 101 (D.Me. 1954), *aff'd mem. sub nom. Baker v. United States,* 221 F.2d 957 (1st Cir.), *cert. denied,* 350 U.S. 842, 76 S.Ct. 82, 100 L.Ed. 750 (1955). The voters here would not seem to fit within any of these categories. Moreover, the decree in effect simply requires the Board to adopt relevant, job-protective rules and regulations and to administer them independently. It does not purport to bar the voters from, for example, abolishing the job of Superintendent or imposing an absolute fixed term of years upon an incumbent's right to hold it. There is no reason here to read the decree as raising the difficult questions of federal judicial power and democratic theory implicit in any contrary interpretation.

■ Whether the voters of Providence in fact have amended the law to eliminate Diamond's job protection is harder to decide. As a matter of logic, one can read the Charter provisions in a way that implicitly would subject them to the decree's protections. Thus, the phrase that says one holding office "shall continue to serve ... until the expiration of [his] term[ ]" may refer to the end of Diamond's "decree-protected" term. And, when the Charter says that the Board "shall ... appoint" a Park Superintendent to a five-year term, it may mean only that it "shall ... appoint" a successor when the incumbent leaves his job. The provisions governing the jobs of

those "who are holding office" when the Charter takes effect do not *explicitly* authorize the Commissioners to remove Diamond simply because they wish to appoint someone else in his place. The only analogous Rhode Island case to which the parties refer us, *Long v. Fugere,* 56 R.I. 137, 140–43, 184 A. 316, 318–19 (*per curiam* ) (1936), does not resolve the issue, for it involved a statute that was more explicit in providing for removal of an incumbent office holder and prompt selection of a successor than are the Charter provisions before us. (In *Fugere,* the incumbent's four-year term was not to expire until January 1937. The new statute changed the relevant term of office from four to two years and announced—in March 1935—that the city council "shall elect a commissioner ... to hold office until February 1, 1937.")

Nonetheless, as the district court notes, the consent decree effectively provided that Diamond "could continue to serve indefinitely as long as no reason existed for his discharge." Opinion and Order at 17 n. 5. He had become a legal anomaly, a "tenured/at will" employee. It is not surprising that the Charter did not deal explicitly with this legal status. And, in light of the Charter's creation of a new 'tenured' superintendent's position with a five-year term, it is unreasonable to believe the Charter intended to perpetuate the anomaly. To do so would, in the district court's words, "suspend[ ] indefinitely the effective date of the Board's power to appoint a Superintendent." *Id.,* at 10. It would deprive the phrase "shall ... appoint" of meaning or effect, perhaps into the indefinite future. The district court concluded that the more reasonable interpretation of the Charter would terminate Diamond's special status upon exercise of the Charter-provided appointment power. His term would then presumably have "expir[ed]" or he would have been "removed from office pursuant to the terms of [the] Charter." Charter § 1402.

Like the district court, we find no persuasive evidence that the voters wished to perpetuate the anomaly of appellant's legal

status, and we hesitate to read it into the Charter where doing so risks rendering a Charter provision inoperative. We also remain "reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in the state, who is familiar with that state's law and practices." *Rose v. Nashua Board of Education*, 679 F.2d 279, 281 (1st Cir.1982); *see Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966, 970 (1st Cir.1978); *Guy v. Mohave County*, 701 F.2d 73, 77 (9th Cir. 1982); *cf. Bishop v. Wood*, 426 U.S. 341, 346–47 & n. 10, 96 S.Ct. 2074, 2078–79 & n. 10, 48 L.Ed.2d 684 (1976). For these reasons, the district court's decision is

*Affirmed.*